[Crim. No. 1973. In Bank.—March 24, 1916.]

## THE PEOPLE, Respondent, v. GEORGE W. JORDAN, Appellant.

Medical Practice Act—Sufficiency of Title—Constitutional Law. The title of the act of 1913, page 722, reading "An act to regulate the examination of applicants for license, and the practice of those licensed, to treat diseases, injuries, deformities, or other physical or mental conditions of human beings; to establish a board of medical examiners, to provide for their appointment and prescribe their powers and duties," etc., is, within the purview of

section 24 of article IV of the constitution, sufficiently expressive of the subject matter contained in the body of the act, requiring examinations to be made and licenses to be issued to persons who shall engage in such business.

ID.—GENERAL SUBJECT STATED IN TITLE.—Where the body of an act embraces provisions which are germane to the general subject stated in its title, the title will be held sufficient to comprehend all of the provisions of the act itself; and where the title suggests to the mind the field of legislation which the text of the act includes, the title will not be held misleading or insufficient, or the act restricted .in its operation.

ID.—ACT NOT DISCRIMINATORY—DRUGLESS PRACTITIONERS—TREATMENT BY PRAYER—PROPER ·CLASSIFICATION.—The act is not unconstitutional in that it is discriminatory in exempting from its provisions a certain class of drugless practitioners, namely, those who resort to prayer as a means of treating persons afflicted with bodily ills. The difference in the method of treatment of those engaged in practice as physicians and surgeons, and those designated as drugless practitioners, and the difference in· the method of treatment of the exempted class of drugless practitioners who treat by means of prayer, constitutes a rational and intrinsic distinction which justifies the classification made and qualifications prescribed by the act.

ID.—LEGISLATURE MAY MAKE CLASSIFICATIONS.—The legislature has the right to establish a classification and exempt one class from the operation of a general law, where the same is founded upon some natural, intrinsic, or constitutional distinction.

ID.—PRACTICE OF MEDICINE—DIAGNOSIS.—Diagnosis is as much a part of the practice of medicine as is the administration of remedies.

ID.—DIAGNOSIS NOT PART OF TREATMENT BY PRAYER.—The fact that the act does not require those who profess to treat bodily afflictions by prayer to be proficient in diagnosis, while it prohibits any one of those who fall within its description to diagnose disease, does not render the act discriminatory, as diagnosis is no part of the treatment by prayer.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Allen & Weyl, Bennett, Turnbull & Thompson, and Delphin M. Delmas, for Appellant.

U. S. Webb, Attorney-General, Robert M. Clarke, Deputy Attorney-General, and Ray E. Nimmo, for Respondent.

MELVIN, J.—An appeal was taken by the defendant to the district court of appeal of the second appellate district. The learned justices of that court could not agree with reference to the constitutionality of the law for violation of which defendant was found guilty, and accordingly the appeal has been duly transferred to this court. We have adopted the opinion prepared by Mr. Justice Victor E. Shaw of the district court of appeal in which Mr. Presiding Justice Conrey concurred. It is as follows:

"Defendant was charged with the commission of a misdemeanor in that, without having a valid, unrevoked certificate from the board of medical examiners authorizing him so to do, he engaged in the practice of a system or mode of treating the sick and afflicted. Upon trial he was convicted as charged in the information. He prosecutes this appeal from the judgment and an order denying his motion for a new trial.

"The statute under which the defendant was prosecuted herein is entitled: 'An act to regulate the examination of applicants for license, and the practice of those licensed, to treat diseases, injuries, deformities, or other physical or mental conditions of human beings; to establish a board of medical examiners, to provide for their appointment and prescribe their powers and duties, and to repeal an act entitled "An act for the regulation of the practice of medicine and surgery, osteopathy, and other systems or modes of treating the sick or afflicted, in the state of California, and for the appointment of a board of medical examiners in the matter of said regulation," approved March 14, 1907, and acts amendatory thereof, and also to repeal all other acts and parts of acts in conflict with this act.' (Stats. 1913, p. 722.)

"It is first contended that the title of the act is not sufficiently expressive of its contents, and that section 24 of article IV of the constitution is violated thereby. Analyzed further, the contention is that the title of the act does not suggest a purpose of the legislature to regulate the business or practice of those who engage in healing or treating the sick or deformed, but to regulate only the matter of the examination of those who choose to apply for certificates, which documents are to merely certify that the holders thereof have been duly examined and licensed. This contention, if it were conceded to be well founded, would result in a construction to be given

to the act which would permit all persons whomsoever to practice medicine, or any mode or system of healing, without being licensed, and would make the matter of procuring a license or certificate merely optional. Admittedly the body of the act is broad and comprehensive enough to regulate the practice of all persons who shall engage in the business of treating the sick or deformed. Section 24 of article IV of the constitution provides as follows: 'Every act shall embrace but one subject, which subject shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title.' Numerous decisions have been made in this state, where the sufficiency of the titles of acts was the question before the court. Under the old constitution a provision like that quoted was held to be directory merely, but in the constitution of 1879 there was incorporated section 22 of article I which declared: 'The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.' Recognizing the mandatory effect of the provision regarding the substance of the titles given legislative acts, the decisions have construed that provision in various cases. It has been said that the purpose of requiring the title to express the subject of the act was that legislators themselves, as well as the public, might not be deceived by false, misleading, or deceitful titles, and so permit mischievous legislation to be unwittingly enacted. A liberal rule of construction has been adopted, however, in the interest of protecting meritorious legislation from being declared void through inartificially constructed titles. 'The main object of this provision is to prevent legislators and the public from being entrapped by misleading titles to bills whereby legislation relating to one subject might be obtained under the title of another. . . . It seems to be well settled that it is not necessary that the title of an act should embrace an abstract or catalogue of its contents.' (*Abeel* v. *Clark*, 84 Cal. 226, [24 Pac. 383].) Where the body of an act embraces provisions which are germane to the general subject stated in its title, the title will be held sufficient to comprehend all of the provisions of the act itself; and where the title suggests to the mind the field of legislation which the text of the act includes, the title will not be held misleading or insufficient, or the act restricted in its opera-

tion. This subject is fully discussed in the opinion in *Ex parte Liddell*, 93 Cal. 633, [29 Pac. 251]. To our minds, by the title of the act here being considered, wherein is set forth the purpose to regulate the examination of applicants for license to treat the sick or deformed, there is suggested at once that the state has proposed to require examinations to be made and licenses to be issued to persons who shall engage in that business. The prohibition that persons not so licensed shall be denied the right to practice seems pertinent and germane to the subject expressed in the title. Several of the illustrative cases given in *Ex parte Liddell*, 93 Cal. 633, [29 Pac. 251], are directly in point.

"Our conclusion on this branch of the case is that the objection as stated in the briefs that the title of the act is not sufficient in its expression of the purposes declared in the body of the act itself, is without merit.

"Section 17 of the act provides: 'Any person who shall practice or attempt to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this state, or who shall diagnose, treat, operate for, or prescribe for, any disease, injury, deformity, or other mental or physical condition of any person, without having at the time of so doing a valid unrevoked certificate as provided in this act, . . . shall be guilty of a misdemeanor.' Section 22 provides that the act shall not be 'construed so as to discriminate against any particular school of medicine or surgery, or any other treatment, nor to regulate, prohibit or to apply to, any kind of treatment by prayer, nor to interfere in any way with the practice of religion.' Appellant insists that the act violates certain constitutional provisions in that it is discriminatory in exempting from its provisions a certain class of drugless practitioners, namely: those who resort to prayer as a means of treating persons afflicted with bodily ills.

"Clearly the purpose of the law is to protect both the individual and the public from the dangers and evils which might result from treatment by those not possessing the knowledge and skill requisite in the treatment of diseases with which mankind is afflicted. It is likewise clear that the degree of knowledge and skill, as well as the character thereof required, depends upon the treatment in the practice of which the practitioner engages. Thus, different qualifications are prescribed for those engaging in practice as physicians and surgeons (sec.

10 of the act) from those designated as drugless practitioners; the intention as to each class being that they shall qualify as possessing the knowledge and skill deemed necessary for the practice of the treatment in which the individuals of each class engage. The physician and surgeon is required to possess a knowledge of many subjects which it is not deemed necessary that the drugless practitioner shall possess. By reason of the different treatment, there is a rational and intrinsic distinction which clearly justifies the classification. Coming to the exempted class of drugless healers, namely: those who treat by means of prayer, here, too, there exists an obvious ground for the classification. The treatment practiced by many, though not all, of the drugless practitioners is by manipulation of the bones and kneading of the muscles and tissues of the person treated. It is apparent that without a proper knowledge of the human body, its organs and functions thereof, or lack of skill, grave consequences to the patient might follow as a result of their treatment. Not so, however, as to one who in prayer invokes Divine power to afford relief to one afflicted by disease. The possession of the prescribed knowledge and skill, without which the chiropractic, osteopath, and neuropath is denied the right to practice his treatment, in nowise renders the prayers of one thus treating bodily ills more efficacious in the curing of disease; nor can it be said the prayer of an illiterate person may, in the consequences to the subject thereof, be more productive of harm or less beneficial than that of one possessing the learning and skill of an educated physician. To our minds, it is obvious that no reason exists for requiring the class engaged in treatment by prayer to possess the knowledge and skill required of others engaged in drugless treatment. The ground for the classification is as obvious as is the distinction between physicians and surgeons on the one hand, and drugless practitioners on the other, and as to each of which classes a different rule applies. That the legislature has the right to establish such classification and exempt one class from the operation of a general law, where the same is founded upon some natural, intrinsic, or constitutional distinction, is too well settled to require citation of authority therefor; indeed, its constitutional right so to do is conceded by appellant. In *Ex parte King,* 157 Cal. 161, [106 Pac. 578], it is said: 'The question whether the individuals affected by a law do consti-

tute such a class is primarily one for the legislative department of the state, and it is hardly necessary to cite authorities for the proposition that when such a legislative classification is attacked in the courts every presumption is in favor of the validity of the legislative act. Where upon the facts legitimately before a court, it is reasonable to assume that there were reasons, good and sufficient in themselves, actuating the legislature in creating the class, though such reasons may not clearly appear from a mere reading of the law, such assumption will be made, and the legislation upheld. To warrant a court in adjudging the act void on this ground, it must clearly appear that there was no reason sufficient to warrant the legislative department in finding a difference and making the discrimination.' In *Hellman* v. *Shoulters,* 114 Cal. 147, [44 Pac. 915, 45 Pac. 1057], the court, in discussing the question of the power of the legislature to classify, says: 'It has been uniformly held that a law is general which applies to all of a class—the classification being a proper one—and that the requirement of uniformity is satisfied if it applies to all the class alike. . . . The word ''uniform'' in the constitution does not mean universal. The section intends simply that the effect of general laws shall be the same to and upon all persons who stand in the same relation to the law,—that is, all the facts of whose cases are substantially the same.' In *Ex parte Bohannon,* 14 Cal. App. 321, [111 Pac. 1039], the question before the court was as to the validity of an act entitled 'An Act for the regulation of the Practice of Medicine and Surgery, Osteopathy, or other system or means of treating the sick or afflicted in the State of California,' etc., (Stats. 1907, p. 252), which act concluded with the provision: 'Provided that nothing herein shall be held to apply or to regulate any kind of treatment by prayer.' It was there claimed, as here, that the exemption so made rendered the whole act unconstitutional and void by reason of giving immunities to those who treat physical ills by prayer. The court in its opinion said: 'If prayer can be regarded as practicing medicine and as an immunity, the act allows every person—man, woman or child—such immunity, and the right to pray for the sick and afflicted, and that is the only way that disease can be treated by prayer. Whether such treatment avails anything or not is not for us to say; but the privilege of practicing such treatment or such supplication is

granted and allowed to all.' The scripture abounds with instances which, if accepted, tend to show that prayer in the treatment of disease was deemed efficacious and helpful. In the Epistle of James it is said: 'Is any sick among you? Let him call for the elders of the church; and let them pray over him, anointing him with oil in the name of the Lord.' To assume that treatment by prayer is less efficacious or more dangerous or harmful to the subject of the prayer by reason of the fact that the supplicant has failed to devote 260 hours to manipulative and mechanical therapy, or has neglected to study elementary bacteriology for a period of 60 hours, does violence to all legal or religious teaching. It is clear that it was the legislative intent to omit from the operation of the statute that class of persons engaged in the healing of the sick by the instrumentality of prayer; and, to our minds, it is likewise clear that a natural, intrinsic, and reasonable ground exists for making the exemption. Since this is true, it must follow that the act is not violative of those constitutional provisions (sec. 21, art. I; subd. 19, sec. 25, art. IV; sec. 11, art. I) having for their purpose the uniform operation of general laws and inhibition against granting immunities to citizens which, *upon the same terms,* shall not be granted to all alike.''

We feel that there is little which we can profitably add to the discussion quoted above, but as it is argued that the act is discriminatory because the prohibitory words thereof make it unlawful for any one of those who fall within its description to ''diagnose'' disease, we will further consider this contention. It is said that to ''diagnose'' disease does not necessarily involve an intention on the part of the diagnostician either to treat the afflicted person or to prescribe for him in any way, and that to require no diagnosis from those who profess to treat disease by prayer, while prohibiting all other unlicensed persons from diagnosing various ailments, is an unjust and unconstitutional regulation, favoring one class of citizens unduly. This whole argument rests upon a misconception of the meaning of the term ''diagnose.'' As used in pathology the word means ''to determine the diagnosis of; to ascertain, as a disease from its symptoms'' (Century Dictionary). The word ''diagnosis'' is derived from the Greek prefix ''dia,'' meaning ''between,'' and ''gignoskein,'' which signifies ''to know thoroughly'' or ''to distinguish'' or ''to discern.'' Hence in its primary sense the word ''diagnosis'' is used to

designate a "distinguishing between" things or a "defini-
tion." In pathology it means "the recognition of a disease
from its symptoms." Some authorities add that the deter-
mination is based upon knowledge and experience. Diag-.
nosis is as much a part of the practice of medicine as is the
administration of remedies, and it is a vastly more important
branch thereof because, generally speaking, the treatment of
disease is governed by the practitioner's theory regarding its
cause. Intelligent treatment may only follow correct diag-
nosis. It is argued that diagnosing is merely "guessing,"
but that is only partially true. It is matter of common
knowledge that in the present development of microscopy,
chemistry, bacteriology, radiography, and kindred sciences,
there are some diseases which may be detected with absolute
certainty by the accomplished diagnostician. For example,
it would be impossible for the educated medical man of to-day
to be deceived into mistaking a case of diphtheria for some
throat affection of a less virulent type for the reason that,
with modern methods, the specific germ of diphtheria may
be easily discovered and recognized. But even where it de-
pends partly upon conjecture, real diagnosis is the product
of knowledge and experience. To diagnose a case is as much
a part of the practice of medicine as the drawing of pleadings
or the giving of advice are parts of the practice of law. No
one would say that an attorney who devoted his efforts to the
preparation of cases, but did not personally present them in
court, was not practicing law. The supreme court of the
United States has declared diagnosis to be a part of the prac-
tice of the healing art, even in systems of treatment which
do not deal with administration of remedies, but with me-
chanical adjustment of parts of the human body. In *Collins*
v. *Texas*, 223 U. S. 288–296, [56 L. Ed. 439, 32 Sup. Ct. Rep.
286], Mr. Justice Holmes, speaking for the court, said: "The
plaintiff in error professes, as we understand it, to help cer-
tain ailments by scientific manipulation affecting the nerve
centers. It is intelligible therefore that the state should re-
quire of him a scientific training. (*Dent* v. *West Virginia*, 129
U. S. 114, [32 L. Ed. 623, 9 Sup. Ct. Rep. 231] ; *Watson* v. *Mary-
land*, 218 U. S. 173, [54 L. Ed. 987, 30 Sup. Ct. Rep. 644].)
He, like others, must begin by a diagnosis. It is no answer to
say that in many instances the diagnosis is easy—that a man
knows it when he has a cold or a toothache. For a general

practice science is needed.'' Viewed in the light of this language the objection which we have been discussing appears to have no weight. It is impossible to dissociate diagnosis from the practice of the art of healing by any physical, medical, mechanical, hygienic, or surgical means. It is therefore competent for the legislature to permit only those persons who are proficient, and who have been found to be educated up to certain standards, to ''diagnose'' ailments.

The objection that those who profess to treat bodily afflictions by prayer are not required to be proficient in diagnosis, and that their exemption, under the law, is the extension of a favor to them which is withheld from others, is met by the obvious answer that diagnosis is no part of such treatment. Those who believe that Divine power may be invoked by prayer for the healing of the body believe also that God is all-powerful. Patients receiving their ministrations know this, and therefore no fraud or injury may be practiced upon such persons by reason of any lack of skill by the healers in determining the nature of the diseases to be treated. But those who elect to depend upon some other system of treatment have a right to protection by the state from the ministrations of unskillful, uneducated persons. For example, a sufferer from a fever who summons a licensed physician holding himself out to the public as one qualified to treat the sick, is entitled to the services of a doctor who has been taught to discriminate between typhoid and smallpox. In other words, the right to practice medicine should carry with it some assurance to the public that the licensed practitioner possesses reasonable proficiency in the technique of his profession.

From the foregoing it follows that the judgment and order should be and accordingly they are affirmed.

Henshaw, J., Sloss, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.