[Crim. No. 689. Third Appellate District.—June 30, 1923.]

## THE PEOPLE, Respondent, v. J. E. WILLIS, Appellant.

[1] MEDICAL PRACTICE ACT—CHIROPRACTORS.—A practitioner of the chiropractic system of treating the sick or afflicted is subject to the provisions of the Medical Practice Act.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. T. Helms for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—The defendant was convicted under an information charging that he "did willfully and unlawfully practice a system and mode of treating the sick and afflicted in the State of California, without then and there having a valid unrevoked certificate of license from the Board of Medical Examiners of the State of California so to do." The statute (sec. 17, Stats. of 1917, p. 114) provides: "Any person who shall practice or attempt to practice or who advertises or holds himself out as practicing any system or mode of treating the sick or afflicted in this state, or who shall diagnose, treat, operate for, or prescribe for, any disease, injury, deformity, or other mental or physical condition of any person without having at the time of so doing a valid unrevoked certificate as provided in this act, . . . shall be guilty of a misdemeanor and upon conviction therefor shall be punished as designated in this act."

[1] No attack is made upon the validity of the statute, but the claim of appellant is that in following his peculiar mode of treatment he is not subject to its provisions. His brief contains an interesting and illuminating discussion of the philosophy and technique of the chiropractic system, but

---

1. Chiropractic as practice of medicine, notes, Ann. Cas. 1913C, 484; Ann. Cas. 1916A, 861; Ann. Cas. 1917E, 1165.

we perceive therein no reason for exempting such practitioners from the requirements of this wholesome law, designed, as it is, ''to protect both the individual and the public from the dangers and evils which might result from treatment by those not possessing the knowledge and skill requisite in the treatment of diseases with which mankind is afflicted.'' (*People* v. *Jordan,* 172 Cal. 391 [156 Pac. 451].)

The general trend of appellant's contention may be disclosed by the following quotation from his brief: ''The science of chiropractic is separate and distinct from the science of medicine and surgery and from all other known forms of what is generally termed 'drugless practice.' The particular difference consists in two things; first, excepting the science of chiropractic, each and every other science having to do with improvement or benefits to the human body, bases its effects upon an attempt to heal the body or to cure the body and may therefore be generally referred to as a therapeutical science as contradistinguished from the science of chiropractic, which makes no claim to being a science or art of healing the body or treating the diseases of the body. . . . In the second place, chiropractic differs from the so-called therapeutical sciences in this: That chiropractic does not recognize disease as an entity, and consequently it cannot treat diseases, nor men nor women for diseases. Chiropractic only aims to establish and maintain the normal function of the tissues of the body by permitting a normal transmission of nerve energy to take place between the nerve centers and the general tissues of the body. The present Medical Practice Act in the state of California never did, does not, and never will apply to chiropractors, because the legislature that enacted it, and the act itself expresses nothing but therapeutic language. The very prohibition contained in the penalizing part of the Medical Practice Act provides 'that every person who practices any mode or system of treating the sick or afflicted,' except as therein provided shall be punished, etc.''

There is much more to the same effect, and the whole brief, we may say with due deference to the learned counsel for appellant, might be regarded as an appropriate article for a medical journal or a valuable contribution to propaganda in favor of this peculiar system of treatment, but it seems idle to say that it offers any defense to the charge of which appellant was convicted.

Of course, it matters not whether the chiropractor recognizes the existence of "disease," as that term is generally used, or what nomenclature he adopts to designate such condition of discomfort. The statute contemplates a departure from a state of health or what appellant is pleased to term "a defective functioning of some organ of the body, or to a morbid condition affecting certain tissues of the body, after this defective functioning or morbidity has existed a sufficient length of time to indicate its presence in the body by symptoms." Common folks generally prefer the simpler term employed by the statute, but if appellant and the followers of his system of practice favor a more euphonious designation, the law will not deny them that privilege. The law, however, does not permit the practice of the "healing art" without a suitable license, no matter what peculiar views of the nature of physical ailments may be entertained by the practitioner.

Appellant's defense is no more reasonable than would be that of a man charged with murder who should claim that he could not commit the offense because he did not believe that there was such a thing in existence as a "human being."

The claim that he could not be legally convicted because in his practice he does not "diagnose" human ailments seems to us equally specious and fanciful. The term as applied to pathology is defined in *People* v. *Jordan, supra,* as "the recognition of a disease from its symptoms." Therein it is said: "To diagnose a case is as much a part of the practice of medicine as the drawings of pleadings or the giving of advice are parts of the practice of the law," and the court quotes with approval the language of Mr. Justice Holmes in *Collins* v. *Texas,* 223 U. S. 288 [56 L. Ed. 439, 32 Sup. Ct. Rep. 286, see, also, Rose's U. S. Notes], as follows: "The plaintiff in error professes, as we understand it, to help certain ailments by scientific manipulation affecting the nerve centers. It is intelligible therefore that the state should require of him a scientific training. (Citing cases.) He, like others, must begin by a diagnosis. It is no answer to say that, in many instances, the diagnosis is easy—that a man knows it when he has a cold or a toothache. For a general practice science is needed." Indeed, it is difficult to conceive of anyone trying to restore to a normal condition a

person who is abnormal without a prior investigation and determination, in a general way at least, of the character of the abnormality. Manifestly, there are no fixed limits to a diagnosis. It may not amount to a scientific classification of the ailment, but it may go no further than an observation of the most obtrusive symptoms, and may be accurate or inaccurate, and yet be within the contemplation of the statute. It seems like an unjust aspersion on the character and intelligence of this respectable body of practitioners to intimate that they attempt to restore "the normal activity of the tissues" without any inquiry or investigation as to what tissues are affected and in what manner their activity may be abnormal.

Moreover, if it may be said that there may be treatment without diagnosis, then the appellant is equally guilty, because the statute enumerates various acts which separately or together constitute an offense. One of these is to "*practice or attempt to practice any system or mode of treating the sick or afflicted* . . . without having at the time of so doing a valid unrevoked certificate as provided in this act." If he does this either with or without a diagnosis he is chargeable with the offense. (*People* v. *Saunders,* 61 Cal. App. 341, 215 Pac. 120.)

The foregoing covers the ground of appellant's objection to the verdict, and we are satisfied there is no merit in his contention.

It may be added that appellant does not question the fairness of the trial judge. To the contrary, he declares "that throughout the entire proceeding, including the argument on the motion for a new trial, the learned lower court was all that could be desired in courtesy and in kindliness, both to the defendant and to defendant's counsel," but he adds that he feels the court acted "in all sincerity upon a mistaken view of the law."

We think the lower court properly interpreted the law and the judgment and order are affirmed.

Jones, J., *pro tem.,* and Finch, P. J., concurred.