[Civ. No. 6002. Second Appellate District, Division Two.—April 20, 1928.]

C. M. TORSON et al., Petitioners, v. WALTER R. FLEMING, Respondent.

Clock, McWhinney & Clock for Petitioners.

C. A. Windham for Respondent.

THOMPSON, J.—This original proceeding in *mandamus* is brought for the purpose of securing the peremptory writ commanding the respondent as director of public service of the city of Long Beach to execute a contract with petitioners for the construction of a sanitary sewer system in certain territory lying partly within the boundaries of the city of Long Beach and partly within the boundaries of the city of Los Angeles. The system proposed is a comprehensive plan for supplying sewer facilities to the inhabitants on either side of the line. On the Los Angeles side it consists of approximately 2,400 feet to be laid on a street crossing the boundary and connecting with approximately 1,300 feet on a street running at right angles to the first-mentioned street and then connecting on another street running at right angles with the last-mentioned street for a distance of approximately 2,800 feet and there connecting with 2,620 feet of sewer already constructed. All of these streets cross the boundary, but the proposed system itself crosses only on the street first mentioned. On the Long Beach side of the in-

visible line the system runs along the line of the street first mentioned which crosses the boundary for a distance of some 400 or 500 feet, then along a right of way and connects with several thousand feet of laterals and branches in that city.

It appears from the petition and return that all the preliminary steps, including a consent to the proceedings by the council of the city of Los Angeles, were taken as required by the provisions of the act which has been termed the "City Boundary Line Act" (Deering, Gen. Laws 1923, p. 3376, and Deering, Cons. Supp. 1925-1927, p. 1995), up to the point where the city council of the city of Long Beach awarded the contract to the petitioners and they had complied with everything to be done by them prior to the signing of the contract by the respondent. When the contract properly executed by petitioners was tendered to the respondent, together with the necessary bonds, he declined to sign. In order to understand the objection raised by the respondent to the contract it is necessary to call attention to the further fact that the only street affected which extends across the exterior boundary of the two municipalities is one which it is proposed shall carry the main trunk line of the sewer system, and that by far the greater portion of the system lies within the boundaries of the city of Long Beach.

The respondent asserts that the Boundary Line Act was never intended to cover the improvement of streets or the construction therein of sewers other than those forming or extending across the exterior boundaries. He points to the title and to sections 1, 2 and 36 of the act and argues that they indicate a legislative intent to so limit the authority of the municipality exercising jurisdiction. That portion of the title which would seem to bear such construction reads: "An act to provide for the establishment and change of grade of public streets, avenues, lanes, alleys, courts, places and rights of way, forming the exterior boundaries of any municipality, whether partly or wholly within or without said boundaries, or extending into the territory of two or more municipalities, or extending into the territory of one or more municipalities and unincorporated territory, and providing for work upon and the improvement thereof, and providing for the construction of sanitary and storm sewers, drains and drainage systems together with any and all ap-

purtenances and appurtenant work in connection with any of such work or improvements; . . . '' Section 1, which declares that certain streets, alleys, and rights of way shall be deemed and held to be open public streets, uses the exact phraseology of the title except that there is inserted the words ''or crossing'' after the word ''forming'' so that it reads ''forming or crossing the exterior boundaries.'' Section 36 reads: ''The provisions of this act shall apply to and authorize the improvement of any street or right of way extending along the boundary line between two municipalities . . . or extending from or through one or more municipalities into or through unincorporated territory. . . . '' Section 2, as amended in 1927 (Stats. 1927, p. 1414) is set forth in full as follows:

''Whenever the public interest and convenience may require, and whenever the city council or other legislative body of each of the municipalities and the board of supervisors of the county, having jurisdiction over any portion of the territory proposed to be included in an assessment district to be formed under this act, shall by resolution consent to the formation of such assessment district and the commencement of a proceeding under this act for the construction of any public work or improvement, the city council of any municipality and the board of supervisors of the county in which said municipality is situated, are hereby severally authorized and empowered to establish, change or modify the grade of, and to order the whole or any portion or portions either in length or width, of any one or more of the streets, avenues, lanes, alleys, courts, places or rights of way forming or crossing the exterior boundary or boundaries of any municipality or municipalities of this state, whether partly or wholly within or without said boundaries, or extending into or through the territory of two or more municipalities or extending into or through the territory of one or more municipalities and unincorporated territory, graded or regraded to the existing or proposed official grade, paved or repaved, macadamized or remacadamized, graveled or regraveled, oiled or reoiled, and to order the construction, reconstruction or repair therein of sidewalks, culverts, bridges, gutters and curbs; and to order the construction, reconstruction or repair therein or in any property or right of way owned by any such municipality or county, of

sanitary sewers, storm sewers, drains and drainage systems, ditches and conduits of any kind or character, for sanitary or drainage purposes, and all structures, plants and appurtenances and appurtenant work of any kind or character necessary or convenient in connection therewith; and to order the construction, reconstruction or repair therein or in any property or right of way owned by such municipality or county, or wells, pumps, drains, reservoirs, storage tanks, channels, tunnels, pipes, hydrants, meters or other appurtenances for supplying or distributing a domestic water supply; and to order any other work to be done which shall be deemed necessary to improve the whole or any portion of such streets, avenues, lanes, alleys, courts, places or rights of way. The council or board of supervisors may include any of the different kinds of work mentioned in this section, and may include such work on any number of streets, avenues, lanes, alleys, courts places or rights of way, or any portions thereof whether contiguous or directly connected, or other wise, in one proceeding, or one contract, or both, and may except therefrom any of such work already done to the official grade and which may be in good condition and repair.''

It is worthy of note that the words ''and to order the construction, reconstruction or repair therein or in any property or right of way owned by such municipality or county, of wells, pumps, drains, reservoirs, storage tanks, channels, tunnels, pipes, hydrants, meters, or other appurtenances, for supplying or distributing a domestic water supply'' were added by the amendment of 1927. It is also to be observed that the legislature at its last session, with the evident purpose of making the act more available and workable and to conform to the procedure extensively employed by municipalities in improvement work, adopted *verbatim*, by way of amendment, those portions of the Street Improvement Act of 1911 (Deering, Gen. Laws 1923, p. 3328) largely containing the procedure to be followed.

So far as we have been able to discern, the only case which has passed upon the legislative intent of the act under consideration is that of *Gadd* v. *McGuire*, 69 Cal. App. 347 [231 Pac. 754], wherein it was said: ''The conditions which the City Boundary Line Act is designed to remedy extend beyond the boundaries of any one municipality. Where the

evil to be remedied reaches beyond the boundaries and jurisdiction of any one municipality—whether such extra municipal ill be due to an unimproved roadway extending into one or more municipalities, or to unsanitary conditions due to the lack of a suitable regional sanitary sewer system, or to a widespread overflow of rain waters—a proceeding to correct the evil by a single comprehensive scheme of improvement on lands in an improvement district which embraces a portion of all of the municipalities affected by the evil conditions is, as we have shown, more than a mere municipal affair.'' And again the court, after speaking of the advantages to accrue by having a city street and connecting highway in connecting contiguous unincorporated territory improved in one comprehensive scheme, and a like community of interest which the inhabitants of two or more municipalities or of a municipality and unincorporated territory may have in the construction of a storm sewer system by a similarly inclusive plan of improvement, says: ''In the same way we can readily imagine a case where it would be equally vital that there should be a common sanitary sewer system, serving the lands on either side of the invisible boundary line. If the city should construct a sanitary sewer system and none should be constructed in the thickly settled community occupying the contiguous unincorporated territory, it is more than likely that there would be unsanitary conditions, threatening the health and welfare of the near-by city dwellers as well as those living just outside of the city, in spite of the city's enterprise.''

A portion of the language of section 2 of the act so perfectly coincides with the part of the opinion just quoted that we feel the necessity of repeating it for the sake of calling attention directly to it. It reads: ''The council or board of supervisors may include any of the different kinds of work mentioned in this section, and may include such work on any number of streets, avenues, lanes, alleys, courts, places or rights of way, or any portions thereof, whether contiguous or directly connected, or otherwise, in one proceeding, or one contract, or both, and may except therefrom any of said work already done to the official grade and which may be in good condition and repair.'' It would seem that this grant of power would be ample in its scope to permit the construction of a sanitary sewer system ex-

tending beyond the boundaries of the municipality, and not necessarily confined to streets forming or crossing the exterior boundaries. It is argued, however, that this language is limited by the title, section 1 and section 36, which we have already quoted. ■ The title must be read not as a limitation upon the authority conferred or as sufficiently defining the power to be given by the act, but as a reference to or skeleton of that which will be found in its body. It will be noted, of course, that the title includes reference to sanitary sewer systems "together with any and all appurtenances and appurtenant work" in connection therewith. It would be most illogical to say that a sanitary sewer *system* could consist of a main trunk line without laterals or branches. ■ It is a familiar rule that the constitutional provision requiring the subject of an act to be expressed in its title must be liberally construed, for which we only need to cite *Estate of Wellings*, 192 Cal. 506 [221 Pac. 628]. ■ It is also established that where the title is sufficient to suggest to the mind the field of legislation to be occupied the title will not be construed to restrict the act in its operation. (*People* v. *Jordan*, 172 Cal. 391 [156 Pac. 451]; *Hunt* v. *Manning*, 24 Cal. App. 44 [140 Pac. 39].) ■ We think the reference in the title to sewer systems and appurtenant work is ample reference to authorize the subsequent language of the act and the obvious purpose of the legislature. Neither can section 1 be considered as limiting the authority conferred in section 2, but rather as a declaration on the part of the legislature that the streets, avenues, lanes, etc., therein mentioned are public streets and that the improvements anticipated in the section are for the public weal. It is apparent from the wording of section 36 of the act and from the fact that no mention is made therein of the construction of sanitary or storm sewers or drainage systems, or of sidewalks or culverts or waterworks, or the establishment or change of grade, that it was not intended to limit the powers of the body acquiring jurisdiction, but rather to make it clear beyond controversy that the improvement of the streets was authorized, as well as the establishment of or change of grade. It cannot be seriously doubted that such was the legislative intent to which we should give effect. To say that section 36 had the effect of limiting the authority conferred by section 2 would be to say that the

municipalities would have no authority under the act (excluding for the moment the provisions of section 19) to install a sanitary sewer system even when laid below the surface of streets forming or crossing the exterior boundaries, for the very patent reason that the installation of a sewer system is not an improvement of the streets. And yet it cannot be successfully argued that the legislature was less desirous of protecting the health of its citizens from unsanitary conditions than of providing improved streets for its motorists. That it was the intent of the legislature to provide for the construction of regional sewer systems is further evident from the provisions of section 19 of the act, which reads as follows:

"The council, or board, shall have full power and authority to construct sewers, gutters, and manholes and provide for the cleaning of the same, and culverts or cesspools, or crosswalks or sidewalks, or any portion of any sidewalk upon or in any of such streets, avenues, lanes, alleys, courts or places, and also for drainage purposes over or through any right of way obtained or granted for such purposes, with necessary and proper outlet or outlets to the same, of such materials, in such a manner, and upon such terms as it may be deemed proper."

It will be noted that this language is quite comprehensive when it uses the expression "over or through any right of way obtained or granted for such purposes," and is in keeping with the portion of section 2 which we have already emphasized.

As has already been suggested, it would be manifestly unfair to the citizens of a municipality as well as the citizens of adjoining territory to subject them to the contamination of unsanitary conditions of adjoining territory by reason of lack of authority to comprehend a logical district in one proceeding. We can assume that there will be nothing unjust or unfair to the inhabitants without the limits of the city acquiring jurisdiction in the scope of the work to be done by reason of the safeguard against such contingency found in the provision that proceedings thereunder are subject to the limitation that the legislative body having jurisdiction over the territory outside the municipality shall consent to the proceedings. There is nothing in this proceeding which would indicate that the district was not properly laid

out as one comprehensive plan for the benefit of all of the inhabitants of the district, whether within the city of Long Beach or within the city of Los Angeles. The return indicates no other reason than the one discussed for the refusal to sign the contract.

The peremptory writ will issue.

Works, P. J., and Craig, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 18, 1928.

All the Justices present concurred.