[Civ. No. 6036. Second Appellate District, Division Two.—August 24, 1928.]

FRANK BALZANO, Petitioner, v. WILLIAM I. TRAEGER, etc., Respondent.

Victor H. Koenig for Petitioner.

Everett W. Mattoon, County Counsel, and S. V. O. Prichard, Deputy County Counsel, for Respondent.

HAZLETT, J., *pro tem.*—This is an original proceeding in *mandamus* to compel respondent to release five hundred dollars belonging to petitioner and held under garnishment by respondent in his capacity as sheriff of Los Angeles County pursuant to a writ of attachment issued in an action in which petitioner was a defendant, then pending in the superior court of Los Angeles County.

In his petition herein petitioner alleges, in addition to the foregoing, that the superior court gave judgment against him in the action for more than five hundred dollars, from which

judgment he perfected an appeal to the supreme court and filed an undertaking in double the amount of the judgment, staying execution; that thereafter, contrary to the provisions of section 674 of the Code of Civil Procedure, the sheriff refused to release the attachment; and that he thereupon made application to the superior court for an order releasing the attachment, which was denied.

An alternative writ was issued by this court upon the petition, and on the return day respondent filed a general demurrer.

Petitioner filed his memorandum of points and authorities in support of his application and respondent filed his brief in support of his demurrer, but petitioner did not reply.

The question presented by the parties herein is whether, under the provisions of section 674, the stay of execution in petitioner's appeal by the execution of his undertaking, terminated the lien of the attachment upon his personal property. This question involves the proposition whether, in the light of section 24 of article IV and section 22 of article I of the state constitution, the provisions of the code section have any application to attachments upon personal property.

Section 24 of article IV provides that ''Every act shall embrace but one subject, which subject shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title, . . . ''; and section 22 of article I provides that ''The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.''

Section 674 of the Code of Civil Procedure, as amended in 1927 (Stats. 1927, p. 830), provides that a judgment shall be a lien upon all property of the judgment debtor not exempt from execution, from the filing of an abstract of the judgment in the office of the county recorder, and that ''Such lien continues for five years from the date of the entry of the judgment or decree, unless the enforcement of the judgment or decree is stayed on appeal by the execution of a sufficient undertaking as provided in this code, . . . in which case the lien of the judgment or decree, and any

lien or liability now existing or hereafter created by virtue of an attachment that has been issued and levied in the action . . . ceases, or upon an undertaking on release of attachment, or unless the judgment or decree is previously satisfied or the lien otherwise discharged . . . '' Although the body of the amendatory act embraces provisions relating to attachments, its title contains no expression in reference to attachment liens or liabilities, but refers only to judgment liens, and is as follows: ''An act to amend section six hundred and seventy-four of the Code of Civil Procedure relating to the recording of a copy of judgments, providing for the lien thereof and the extent of such lien.'' This act re-enacted from section 671 of the Code of Civil Procedure and incorporated into section 674 the substance of section 671 relating to judgment and attachment lien, and section 671 was amended at the same time (Stats. 1927, p. 829), limiting its provisions to govern only the entry of judgments in the docket. As will hereinafter appear, the title of the act adopting section 671 and the titles of all the acts adopted prior to 1927, amending that section, expressed and related only to judgment liens.

■ The sole purpose of an attachment is to hold the property of the defendant to secure the judgment that may be rendered in the action. When the attachment is upon real property and the judgment lien is established, the attachment lien merges in the lien of the judgment and thereafter the only effect of the lien of such attachment is to preserve the priority thereby. acquired. This priority is continued and enforced under the judgment. The lien of the attachment on real property is not completely extinguished by the judgment, but such lien ceases in all respects except to maintain the priority created and merges in the lien of the judgment in the sense and to the extent that there are not then two separate and distinct and subsisting liens against the same property. (*Bagley* v. *Ward*, 37 Cal. 121, 131 [99 Am. Dec. 256]; *Brun* v. *Evans*, 197 Cal. 439 [241 Pac. 86].) The lien of the judgment and the lien of the attachment on real property are both terminated by the filing of a *supersedeas* bond. (*Brun* v. *Evans*, *supra*.)

■ The judgment does not become a lien upon personal property even though the property is held by attachment

in the action (*Bagley* v. *Ward, supra*), but the lien of the attachment continues after judgment to preserve the lien and its priority and to allow the issue and levy of execution under the judgment (6 Cor. Jur. 271), and the judgment alone can be enforced against the property. (Sec. 681, Code Civ. Proc.; *Pease* v. *Frank,* 263 Ill. 500 [105 N. E. 299].)

Respondent's first contention is that section 674, so far as it relates to any lien of attachment, has application only to the lien of any attachment upon real property which merges into the judgment in the action; and, that if the legislature, in adopting the legislation, intended to include and cover the lien of any attachment upon personal property the titles of the acts adopting or amending sections 671 and 674 of the Code of Civil Procedure, would have been so worded as to embody some reference thereto.

Consideration of the history of those sections will be of interest. Section 671, as adopted into the Code of Civil Procedure of 1872 (being a re-enactment of the substance of section 204 of the Practice Act), related only to judgment liens and contained no reference to attachment liens, but embodied the following: " . . . from the time the judgment is docketed it becomes a lien upon all the real property of the judgment debtor, not exempt from execution, in the county, owned by him at the time or which he may afterward acquire until the lien expires. The lien continues for two years unless the judgment be previously satisfied." This section was amended in 1874 (Amendments of 1874 to the Codes, p. 320), by changing the word "expires" to "ceases" and the last sentence to read as follows: "The lien continues for two years, unless the enforcement of the judgment be stayed on appeal by the execution of a sufficient undertaking, as provided in this Code, in which case the lien of the judgment ceases." The title to this amendment is not important for the reason that the provision of section 25 of article IV of the constitution of California of 1849, relating to the titles of legislative enactments, in effect until the adoption of the constitution of 1879, was held to be directory only and not binding upon the legislature or the people. (See the decisions hereinafter cited.) Section 671 was again amended in 1895. (Stats. 1895, p. 36.) The title of this amendment is as follows: "An act to amend section six

hundred and seventy-one of the Code of Civil Procedure, relating to the lien of judgments, their enforcement and revivor.'' This amendment re-enacted the section as adopted in 1874 except that the last sentence was changed to read as follows: ''The lien continues for five years, unless the enforcement of the judgment be stayed on appeal by the execution of a sufficient undertaking as provided in this code, in which case the lien of the judgment and any lien by virtue of an attachment that has been issued and levied in the action ceases.'' Section 671 was again amended in 1917 (Stats. 1917, p. 141), by an act entitled as follows: ''An act to amend section six hundred seventy-one of the Code of Civil Procedure, relating to judgment liens,'' and the only change in the section was to require the clerk, in docketing the judgment, to enter the hour and minute of the entry. Section 671 was again amended in 1923 (Stats. 1923, p. 751) by an act entitled: ''An act to amend section six hundred seventy-one and section six hundred seventy-four of the Code of Civil Procedure and to repeal section six hundred and seventy-one-a of said code, relating to judgment liens and transcripts of judgments.'' No change was made in that part of the body of the section which related to the liens of judgments and attachments in the state courts. The amendments of 1927 to the sections and the title to the amendment of that year to section 674 are hereinbefore referred to at length.

As the expressions contained in the titles above quoted are limited to judgment liens we should not assume that the legislature intended to have the provisions of those code sections regarding attachment liens cover or affect the lien of any attachment which does not merge into the judgment and become a part of the judgment lien. If we should hold that the legislature intended to provide that the execution of the undertaking on appeal from the judgment should terminate the lien of an attachment upon personal property in the action we would be holding, in effect, that the legislature attempted to embody in section 671, and later in section 674, a provision not mentioned in any of the titles of the acts adopting or amending them, and, therefore, attempted to violate the prohibition of the constitution. We

hold that the sections were not intended to relate to or affect the lien of any attachment on personal property.

Respondent's second contention is that if, in amending section 674 of the Code of Civil Procedure in 1927, the legislature intended the construction of the amended section to be that the stay of execution in an appeal from a judgment should cause the lien of an attachment on personal property in the action to cease, such intention was ineffective, and that the portion of the amended section which relates to such attachment is therefore in violation of the constitutional prohibition and void, for the reason that the amended section embodies a subject not expressed in the title to the amendment or in the title of any prior legislation mentioned in the title to the amendment.

Prior to the adoption of the constitution of 1879 the constitutional provision regarding title to legislative enactments was as follows: ''Every law enacted by the legislature shall embrace but one subject, and that shall be expressed in the title; . . . '' (sec. 25, art. IV, Const. of 1849). The construction placed upon that provision by the supreme court was that it was merely directory (*Washington* v. *Page,* 4 Cal. 388), and could operate only upon the conscience of the lawmakers, for the infraction of which there was no remedy in the courts (*Pierpont* v. *Crouch,* 10 Cal. 315). Also that where the meaning of the body of the act was doubtful, the title could be relied on as an assistance in arriving at a conclusion, but it could not be used to restrain or control any positive provision of the act, and in case of doubt it should be resorted to as a means of ascertaining the intention of the legislature. (*Flynn* v. *Abbott,* 16 Cal. 359, 366; *Barnes* v. *Jones,* 51 Cal. 303, 306; *In the Matter of Boston Mining & Milling Co.,* 51 Cal. 624.) Those decisions were handed down before the adoption of the constitution of 1879. However, in construing section 24 of article IV of the latter constitution, in the light of section 22 of article I of the same constitution announcing the rules for construing its provisions, still in effect, different rules as to the necessity, value, and construction of titles to legislative enactments have been recognized and followed by the courts. The constitution of 1849 contained no provision relating to the rules for construing its provisions.

It was held in *Wood* v. *Election Commrs.*, 58 Cal. 561, 565, decided in 1881, that as to any subject embraced in an act of the legislature which was not expressed in its title, the act was in violation of the constitution and void; and in *Abeel* v. *Clark*, 84 Cal. 226, 228 [24 Pac. 383], the court announced that the main object of the constitutional provision "is to prevent legislators and the public from being entrapped by misleading titles to bills, whereby legislation relating to one subject might be obtained under the title of another," and "that it is not necessary that the title of an act should embrace an abstract or catalogue of its contents."

In the leading and often-quoted decision in the case of *Ex parte Liddell*, 93 Cal. 633 [29 Pac. 251], in addition to again announcing the above rules, the court said that: "At the present time . . . the object of the provision (sec. 24, art. IV, Const. of 1879) is . . . to guard against the passage of bills, the titles of which give no intimation to the members of the legislature or to the people of the matters contained therein . . . There was a similar provision in the Constitution of 1863, and it was held here that it was merely directory, and did not nullify laws passed in violation of it, but the provisions of the Constitution of 1879 'are mandatory and prohibitory, unless by express words they are declared to be otherwise.' . . . It certainly was not intended that the title should be a repetition of the provisions found in the body of the bill; . . . If the title contains a reasonable intimation of the matters under legislative consideration, the public cannot complain. It has always been the custom to state the subject of a bill in general terms and with fewest words, and the framers of the Constitution doubtless intended the legislature to conform to that custom. . . . It is admitted that the constitutional provision under consideration has always been given a liberal construction; and this must be so, because the Constitution itself does not define the degree of particularity with which a title must specify the subject of a bill. The matter must therefore, be left largely to legislative discretion."

It was held in the case of *Clark* v. *City of Los Angeles*, 160 Cal. 30, 40 [116 Pac. 722], that the provisions of section 22 of article I of the constitution, "as is well known,

was inserted (in the Constitution of 1879) because of certain previous decisions holding that the provisions of the Constitution of 1849 regarding the titles of legislative acts were directory and not mandatory." (Citing cases.)

It was held in *People* v. *Jordan,* 172 Cal. 391, 394 [156 Pac. 451], that "a liberal rule of construction has been adopted in the interest of protecting meritorious legislation from being declared void through inartificially constructed titles." To the same effect, see *Estate of Wellings,* 192 Cal. 506, 519 [221 Pac. 628]; *People* v. *Sterling Refining Co.,* 86 Cal. App. 558 [261 Pac. 1080]; *Torson* v. *Fleming,* 91 Cal. App. 168 [266 Pac. 845].

It was held in the case of *In re Werner,* 129 Cal. 567, 570 [62 Pac. 97], that where the title of an act fairly indicated but one subject and the body of the act embraced a separate and distinct subject not expressed in the title, that the portion of the act relating to the latter subject was in conflict with the constitution and void. To the same effect see, also, *Pratt* v. *Browne,* 135 Cal. 649 [67 Pac. 1082]; *Estate of Melone,* 141 Cal. 331, 333 [74 Pac. 991]; *Williams, Superintendent of Banks,* v. *Carver,* 171 Cal. 658, 661 [154 Pac. 472]; *Miller & Lux, Inc.,* v. *Drainage District,* 182 Cal. 252, 271 [187 Pac. 1041]; *People* v. *Sterling Refining Co., supra; Estate of Phillips,* 203 Cal. 106 [263 Pac. 1017]; *Brunson* v. *City of Santa Monica,* 27 Cal. App. 89, 91, 92 [148 Pac. 950; *Wallace* v. *Zinman,* 200 Cal. 585 [254 Pac. 946]. A full exposition of the subject is found in Cooley's Constitutional Limitations, eighth edition, sections 308 to 313, inclusive, having particular reference to the rules of construction herein discussed, the change in the rules recognized by our courts and the reasons for the change.

Our first duty is to maintain the constitution as it is, and whenever it is encroached upon we must maintain its supremacy. (*Lewis* v. *Dunne,* 134 Cal. 291, 297 [86 Am. St. Rep. 257, 55 L. R. A. 833, 66 Pac. 478].) If the portion of section 674 of the Code of Civil Procedure which attempts to provide a method for releasing personal property from attachment should be upheld it would be opening the door to the accomplishment by indirection of an evil which the framers of the constitution manifestly intended to directly prevent—that is, giving effect to a legislative enactment

upon a subject not expressed in its title. Our conclusions cannot be controlled by any matter of convenience to litigants or because of any consideration of the fact that an appellant's personal property may still be held under attachment in the action, although he has executed a sufficient undertaking in his appeal from the judgment against him which will amply secure the respondent's rights under a decision that may affirm the judgment. If the procedure provided for in the section results in unnecessary hardships to litigants, that is a matter for the legislature to remedy, but is no justification for the court to disregard the plain and salutary provisions of the constitution, made for the protection of all our people, including the lawmakers in enacting our laws. *"Ita lex scripta est."* (*Weill* v. *Kenfield,* 54 Cal. 111, 117.)

A hasty reading of the opinion in the late case of *Los Angeles City School District* v. *Odell, President of the Board of Education,* 200 Cal. 637 [254 Pac. 570], might give the impression that the supreme court had thereby set aside those rules of construction which have been adhered to ever since the adoption of the constitution of 1879, and had reverted to the rules announced prior thereto under the provisions of the constitution of 1849. We do not believe that such was the intention of the court. In that case the facts were that the act under consideration was amendatory of a former act adopting section 1617½ of the Political Code, and that the title to the former contained a limitation relating to the subject of the code section, which limitation was omitted from the body of the amendment, but the title of the amendatory act recites that it is "An act to amend section 1617½ of the Political Code" and repeats the title of the prior act which expressed the limitation. The court held that the general subject of the amendment was expressed in the title, and that the fact that the scope of the body of the amendatory act was enlarged beyond that indicated by the title of the prior act, which title was repeated in the title of the amendatory act, did not make the amendatory act a violation of section 24 of article IV of the constitution for the reason, mainly, that the portion of the title of the amendatory act which reads " 'An act to amend section 1617½ of the Political Code' adequately expresses the inten-

tion of the legislature which was to supersede the previous legislation *upon the subject.*" (Italics ours.)

The *subject* of the legislation under consideration in the case before us, as limited by the titles of the acts relating thereto, is the *liens of judgments.*

It follows that section 674 of the Code of Civil Procedure, so far as it may relate to the lien of any attachment on personal property, is in contravention of section 24 of article IV of the constitution and void.

The peremptory writ is therefore denied and the proceeding is dismissed.

Craig, Acting P. J., and Thompson, J., concurred.