[S. F. No. 13658. In Bank.—May 31, 1930.]

ALEXANDER R. HERON, as Director of the State Department of Finance, etc., Petitioner, v. RAY L. RILEY, as Controller, etc., Respondent.

Webb Shadle for Petitioner.

Thomas H. Christiensen for Respondent.

John J. O'Toole, City Attorney of the City and County of San Francisco, and Henry Heidelberg, Deputy City Attorney; Erwin P. Werner, City Attorney of the City of Los Angeles, and D. M. Kitzmiller, Deputy City Attorney; Harold P. Huls, City Attorney of the City of Pasadena, and Leonard A. Diether, Deputy City Attorney; Percy V. Long,

G. E. Sandford, Ivan Kelso and J. Allen Davis, as *Amici Curiae.*

WASTE, C. J.—By the former decision and judgment in this cause the respondent was directed to audit and allow the claim of petitioner as prayed for. The petition of the controller for a rehearing was granted because of his contention that the court had overlooked and failed to consider the decision of the District Court of Appeal in *Brunson* v. *City of Santa Monica,* 27 Cal. App. 89 [148 Pac. 950], and to permit further consideration to be given to the question of whether or not the title of the act in question (Stats. 1929, p. 565), adding a new section to the Civil Code to be numbered 1714½, satisfies the requirements of section 24 of article IV of the Constitution wherein it is provided that "Every act shall embrace but one subject, which subject shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title. . . . ''

An examination of the many decisions interpreting and applying the foregoing constitutional provision convinces us that we were correct in holding in the former opinion that the title is sufficient. ▓ The main object of the provision, of course, is to prevent legislators and the public from being entrapped by misleading titles to bills whereby legislation relating to one subject might be obtained under the title of another. (*Frank* v. *Maguire,* 201 Cal. 414, 418 [257 Pac. 515].) In the accomplishment of this object, however, the constitutional provision is not to receive a narrow or technical construction, but is to be construed liberally to uphold proper legislation, all parts of which are reasonably germane. In other words, the provision was not designed as a loophole of escape from, or a means for the destruction of, legitimate legislation. (*McClure* v. *Riley,* 198 Cal. 23, 26 [243 Pac. 429].) ▓ This being so, the authorities are legion to the effect that the title of an act need not embrace an abstract or catalogue of its contents, but need only contain a reasonable intimation of the matters under legislative consideration. The authorities are numerous to the effect that the title of an act may be relied on in ascertaining the intention of the legislature, where the act itself

is ambiguous; but the title "cannot be used for the purpose of restraining or controlling any positive provision of the act." (*Los Angeles City School Dist.* v. *Odell*, 200 Cal. 637, 641 [254 Pac. 570].) There is no ambiguity in the act here under consideration.

As stated in *Estate of Wellings*, 192 Cal. 506, 519 [221 Pac. 628, 634], all that is required to be contained in the title of an act in order to meet the constitutional requirement "is a reasonably intelligent reference to the subject to which the legislation is to be addressed." Again, in *Buelke* v. *Levenstadt*, 190 Cal. 684, 687 [214 Pac. 42], it is said: "All that is required in that connection is that the subject must be in some way indicated by the title of the act, or be logically germane to it, and included within its scope." The general subject need not appear in the title, if it is clearly disclosed or *readily inferred from the details expressed*. (*Hill* v. *Board of Supervisors*, 176 Cal. 84, 88 [167 Pac. 514], citing Sutherland on "Statutory Construction.") In *People* v. *Fryer*, 175 Cal. 785, 793 [167 Pac. 382], the rule is stated as follows: "It was never expected that the title to an act should be an index to all of its provisions, and so long as the provisions themselves are cognate, attingent, and germane to the subject matter of the title, no violence is done to the Constitution." Where the body of an act embraces provisions which are germane to the general subject stated in its title, the title will be held sufficient to comprehend all of the provisions of the act itself; and where the title suggests to the mind the field of legislation which the text of the act includes, the title will not be held misleading or insufficient, or the act restricted in its operation. (*People* v. *Jordan*, 172 Cal. 391, 393, 394 [156 Pac. 451].) The rule is also stated as follows: " . . . if it appears that the title of the act is reasonably indicative of the legislation contained within the provisions of the statute, the objection that the subject of the act is not expressed in its title cannot be sustained." (*Matter of Lake*, 89 Cal. App. 390, 395 [265 Pac. 325].) In *Treat* v. *Los Angeles Gas etc. Co.*, 82 Cal. App. 610, 613 [256 Pac. 447], it is held that "the legislature may insert in a single act all legislation germane to the general subject as expressed in its title *and within the field of legislation suggested by that title*." Again, in *People* v. *French*, 61

Cal. App. 275, 278 [214 Pac. 1003], it is said: "The objections should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment. . . . It is not essential that the best or even an accurate title be employed, if it be suggestive in any sense of the legislative purpose. The remedy to be secured and mischief avoided is the best test of a sufficient title, which is to prevent it from being made a cloak or artifice to distract attention from the substance of the act."

This brings us to the pertinent inquiry, Does the title of the act here involved satisfy the requirements of the constitutional provision as above interpreted? The title reads as follows: "An act to add a new section to the Civil Code to be numbered 1714½, relating to negligence upon the part of officers, agents and employees of the state, counties, cities and counties, municipal corporations, school districts, irrigation districts, districts established by law and political subdivisions of the state and authorizing the issuance of insurance covering such liability." The contention is made that because the foregoing title fails to expressly declare, as provided in the body of the act, that liability for the negligence of such officers, agents and employees is to be borne by the state or other political subdivision represented by them, such title is hopelessly deficient and violative of the constitutional provision. As already pointed out, "it is not essential that the best or even an accurate title be employed, if it be suggestive in any sense of the legislative purpose." The legislative enactment under consideration has to do solely with the negligence of public officers, agents and employees, and the title thereof clearly and succinctly discloses this to be the fact. In other words, a reading of the title immediately "suggests to the mind the field of legislation which the text of the act includes" and, under the authorities, everything germane to the general subject as expressed in the title may be included within the body of the act. It will not be doubted that "liability" is inseparably connected with and is an outgrowth of "negligence." It is only reasonable to conclude, therefore, that an act, the title of which states that it relates to the negligence of certain persons, may, as a part of the text, fix the responsibility

for such negligence. The fixing of liability is certainly germane to the negligence giving rise thereto.

The case of *Brunson* v. *City of Santa Monica*, 27 Cal. App. 89 [148 Pac. 950], so strongly relied on in support of the argument that the present act is unconstitutional, is clearly distinguishable. The title of the act there involved was unquestionably misleading and insufficient, for it very definitely intimated that the act related solely to the *liability of public officers*, thus effectively precluding any thought or idea that the body of the act dealt with the liability of the public corporations represented by such officers. It was therein held: "Here we have an act which in its title purports to deal with the liability of public officers for damages resulting from certain specified causes. This cannot by any process of reasoning be made to include the subject of liability of the public corporations in whose service such officers may be. The act is void as to any purported legislation therein contained attempting to create a new rule of liability as against such corporations." The title of the act in the case at bar does not, in our opinion, as did the title in the Brunson case, restrict the provisions of the act to the "liability" of any person or persons. It states in a general way that the act relates to the "negligence" of certain public officers, agents and employees, and refers to "the issuance of insurance covering such liability," thus suggesting to anyone reading the title that liability for such negligence is to be ascertained from a reading of the text. We do not think it fatal to the act that the title failed to further refer to the subject of liability, for that is a subject germane to and logically falling within the bounds of the title.

The phrase, "and authorizing the issuance of insurance covering such liability," appearing at the close of the title of the act here involved, would seem to furnish an additional reason for holding the title sufficient. If the act merely purported to cover the liability of public officers, agents and employees, as distinguished from the liability of the public corporations represented by them, the inclusion of such a clause in the title would have been wholly unnecessary. That is to say, there would be no reason for special legislation authorizing officers, agents and employees of the state or political subdivisions to insure themselves against personal liability. That would be a matter for

purely private determination. The presence of such a clause in the title of the act should, and does, serve to give rise to a query as to whose responsibility is to be insured against, which can readily be ascertained from the text. The title of this act cannot, therefore, be said to be "a cloak or artifice to distract attention from the substance of the act."

With this preliminary consideration of the contention of the respondent stressed in the petition for rehearing, we adopt the opinion first handed down, and from which the facts involved fully appear:

"The legislature, at its last session, added a new section to the Civil Code (sec. 1714½, Stats. 1929, p. 565) making the state and certain designated political subdivisions owning any motor vehicles responsible to persons sustaining damage by reason of death or injury to person or property as the result of the negligent operation of such motor vehicles by any officer, agent or employee or as the result of the negligent operation of any other motor vehicle by any officer, agent or employee when acting within the scope of his office, agency or employment. Such damaged person may now sue the state or political subdivision in any court of competent jurisdiction in this state in the manner directed by law. In case of a recovery under the provisions of the section, the state or appropriate subdivision is subrogated to the rights of the person injured, and may, in turn, recover from the officer, agent or employee causing the damage the amount of any judgment recovered against the state or subdivision in the damage suit. The state and the designated political subdivisions are authorized by the provisions of the act to insure their liability in any insurance company permitted to transact the business of such insurance in the state of California, and the premiums for such insurance shall be a proper charge against the respective general funds of the state or subdivision.

"After the effective date of the new law, the petitioner, under the authority vested in him as Director of the State Department of Finance, contracted with a qualified insurance company for policies of insurance indemnifying the state, in the event of responsibility arising under the provisions of the section. The policies, duly authorized, were executed, issued and delivered. The petitioner prepared and presented to the respondent, State Controller, a claim against

the emergency fund provided in the budget bill of 1929 (Stats. 1929, pp. 81–96) for the sum of $23,747.49, that being the amount of the total premiums on the policies so secured. The respondent has refused to allow the claim, and declines to draw his warrant for the amount. Petitioner is here seeking a writ of mandate to compel him to do so. Respondent has demurred to the petition.

"The Controller does not question the power of the petitioner to direct the payment of the claim for the amount of the premiums, if section 1714½ is constitutional, provided a valid appropriation was made for the purpose, but interposes several objections to its being recognized as a legal demand. ▮ The first of these is that there is no valid express appropriation for the payment of the premiums in the act itself or in the general appropriation bill, his further contention being that the 'emergency fund' carried in the general budget cannot be drawn upon for any such purpose.

"The act making appropriations for the support of the government of the state of California for the biennial period 1929–31, after setting aside specific amounts for each of the departments of state and its many institutions and for other public purposes (Stats. 1929, *supra*), provides as follows:

" 'Emergencies.

" 'For emergency fund, one million dollars ($1,000,000) (exempt from sec. 4 of this act) to be expended only on written authorization of the state department of finance for emergencies. Emergencies within the meaning of this provision are hereby defined as contingencies for which no appropriation or insufficient appropriation has been made by law.' It has been the practice in this state for many years for the legislature to include a similar provision in the general appropriations act, thus providing for the payment of emergency claims against the state and its activities, rather than subject the departments of the state and its officers to embarrassment in the administration of the state's business, and put claimants to the annoyance and uncertainty of having to depend upon subsequent legislatures for reimbursement for services and supplies furnished. The purpose and policy of such an appropriation in the general budget bill has gone unquestioned during the time

many legislatures have met. The plan seems meritorious and, so far as we are given to understand, it has not been challenged heretofore in its general application. We see no good reason, therefore, for now saying that it is not a proper plan to pursue, provided, of course, the demands against the emergency fund are just and reasonable. The definition in the act of what circumstances shall be sufficient to give rise to an 'emergency,' subjecting the emergency fund to a valid demand, seems to us to be logical and reasonable. We see no reason why it may not be held that the present situation presents an 'emergency' within the intent and definition of the legislature. The distinction between the situation here presented and the facts in *Ingram* v. *Colgan*, 106 Cal. 113 [46 Am. St. Rep. 225, 28 L. R. A. 187, 38 Pac. 315, 39 Pac. 437], so strongly relied on by respondent, is that in that case the statute (1891, p. 280) not only, like the one in the present instance, made no provision for the payment of the claims there involved (coyote scalps), but in addition, there was no provision made in the general appropriations bill for the payment of any emergency claims against the state. In the instant case the legislature has set aside a definite sum, to-wit, one million dollars, for the payment, among other things, of 'contingencies for which no appropriation has been made.' We think the use of the word 'contingencies' is sufficiently general to include a situation like the one here presented. As to the wisdom of such a course—a question suggested by the respondent— of reposing such a power in the hands of an executive officer of the state, that is a matter resting solely with the legislature.

"The other objections advanced by the respondent may be classed as resting on constitutional grounds. It is urged that the title of the act is insufficient. It is as follows: 'An act to add a new section to the Civil Code to be numbered 1714½, relating to negligence upon the part of officers, agents and employees of the state, counties, cities and counties, municipal corporations, school districts, irrigation districts, districts established by law and political subdivisions of the state and authorizing the issuance of insurance covering such liability.' The provisions of the act are relevant to the liability of the state and its political subdivisions for damages for injuries caused by the negligent operation

of automobiles used in public service. In this sense they are expressive of but one general subject, and all parts of the general object to be attained by the statute are sufficiently catalogued in the title. (*In re Application of Schuler*, 167 Cal. 282, 293 [Ann. Cas. 1915C, 706, 139 Pac. 685]. See, also, *Estate of Wellings*, 192 Cal. 506, 519 [221 Pac. 628].)

■ ''We are not strongly impressed with the contention of the respondent that the application of funds to pay judgments obtained against the state constitutes a gift of public money, within the prohibition of the Constitution. The state cannot be subjected to suits against itself except by its express consent; but it may surrender its sovereignty in that particular. It has done so in this instance through the act of its duly authorized representative, the legislature. The judgments which are to be paid bear no semblance to gifts. They must be first obtained in courts of competent jurisdiction, to which the parties have submitted their claims in the manner directed by law. In other words, they are judgments obtained after the requirements of due process of law have been complied with. The legislature has not attempted to create a liability against the state for any past acts of negligence on the part of its officers, agents or employees—something it could not do, and the doing of which would, in effect, be the making of a gift—but has provided that 'hereafter' it shall be liable for certain things done which cause damage to its citizens, its liability to be first determined by an appropriate action at law.

■ ''It is objected that the section is class legislation, in that it inures to the benefit of a favored class of citizens, that is, only those who are damaged through the negligent operation of automobiles owned by or used in the service of the state, and thereby makes a distinction in their favor as against citizens who may suffer damages through being injured by other state owned and operated instrumentalities, and who are without recourse against the state because it has made no such remedial provision for them. This objection goes only to the policy of such legislation, and the wisdom of the legislature in enacting it. A right of action to one injured through the operation of an instrumentality used by the state did not exist at common law. It is not an inherent right, and exists only so far, and in favor of

such persons as may be declared by the legislative power of the state. The provisions of the Constitution were not intended to make it necessary that the legislature, when conferring new rights of action upon particular classes of citizens for injuries not previously actionable, should, by the same act, declare that all persons who may suffer damages from injuries of that character shall also have such right of action. (*Pritchard* v. *Whitney Estate Co.*, 164 Cal. 564, 568 [129 Pac. 989].) ▇▇ Consequently, a law, to be general in its scope, need not include all classes of individuals in the state. It answers the constitutional requirements if it relates to and acts uniformly upon the whole of any single class of individuals or objects, and the classification is founded upon some natural, intrinsic or constitutional distinction. (*Abeel* v. *Clark*, 84 Cal. 226, 230 [24 Pac. 383]; *People* v. *Jordan*, 172 Cal. 391, 397 [156 Pac. 451].) If good ground for the classification exists, such classification is not void because it does not embrace within it every other class which might be included. It is common knowledge that the operation of automobiles upon the streets and highways of the state imposes a hazard upon practically the entire population. It is alleged by the petitioner, and not denied, that the state owns and operates, in connection with its business, approximately twenty-five hundred motor vehicles, and operates, under a mileage arrangement with certain of its officers, agents and employees, approximately one thousand additional motor vehicles. The operation of such a large number of motor vehicles means that inevitably many claims will arise for injuries caused to persons and property. One of the allegations of the petition is that, since section 1714½, *supra*, became effective, 'many claims have been presented to the state by persons alleging damage to property caused by the negligent operation of state-owned motor vehicles, and that other claims for damage to persons by reason of death and injury and damage to property caused by the negligent operation of state-owned motor vehicles and other motor vehicles operated by officers, agents and employees of the state will be presented to the state from time to time.' In a very recent case, the Supreme Court of the United States took judicial notice of the 'increasing frequency of litigation' arising from the use of the automobile as an instrument of transportation, and held that such use 'is

peculiarly the subject of regulation' and that 'whether there has been a serious increase in the evils of vexatious litigation in this class of cases . . . is for legislative determination . . . Its wisdom is not the concern of the courts. . . . It is enough,' said the court in conclusion, if the 'statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs.' (*Silver* v. *Silver*, 280 U. S. 117 [74 L. Ed. 221, 50 Sup. Ct. Rep. 57–59].)

■ "The complaint that the act violates that part of section 21 of article I of the state Constitution which provides that no citizen or class of citizens shall be granted privileges which, upon the same terms, shall not be granted to all citizens, is, we believe, sufficiently answered by what we have said on the question of the classification by the act of those permitted to maintain an action under its provisions, and by other decisions of this court. (*County of San Luis Obispo* v. *Murphy*, 162 Cal. 590 [Ann. Cas. 1913D, 712, 123 Pac. 808] ; *Pritchard* v. *Whitney Estate Co., supra.*)

■ "We discern little merit in the contention that because the act provides that, in case of a recovery under its provisions by one who has been injured, the state or political subdivision is subrogated to the rights of the person injured, and may, in turn, recover from the officer, agent or employee causing the damage, it violates the inhibition of subdivision 3 of section 25 of article IV of the state Constitution against special laws regulating the practice of courts of justice. The provision complained of but serves to give to the employer or principal of the person causing the injury the benefit of the well-settled rules of equity now recognized in law, upon the subject of subrogation, which are part of the substantive law, and does not relate to practice in the courts."

Let a peremptory writ of mandate issue directing the respondent state controller to audit and allow the claim of petitioner herein, as prayed for.

Curtis, J., Preston, J., Shenk, J., Richards, J., and Seawell, J., concurred.