[Civ. No. 2377.   Fourth Appellate District.—July 17, 1940.]

CLAUDE L. CHAMBERS, Appellant, v. CLARENCE F. TERRY, Respondent.

Charles C. Crouch and George W. Crouch for Appellant.

Wright, Monroe, Harden & Thomas and Hervey & Holt for Respondent.

BARNARD, P. J.—This is an election contest. Following an election which was held in April, 1939, the contestee was declared to be elected to the office of judge of the Municipal Court of the City of San Diego. ▇ The contestant, who was a candidate for the same office at that election, filed a contest on the sole ground that under the "law of the State of California relating to Municipal Courts in the City of San Diego" the contestee was ineligible and not qualified to be elected to this office for the reason that he "had not had at least five years active practice at law in this State prior to his said election". A demurrer to the statement of contest was sustained by five judges of the Superior Court of San Diego County, sitting in bank, and the contestant has appealed from the judgment which followed.

At the time this election was held, subdivision (a) of section 9 of the Municipal Court Act (Deering's Gen. Laws, Act 5238), which related to the Municipal Court of the City of San Diego, provided that the judges of said court "must have had at least five years active practice at law in this State prior to their election or appointment". Shortly after that election this section was so amended as to provide that such judges must have been admitted to practice before the Supreme Court of this state for a period of at least five years immediately preceding their election or appointment. (Stats. 1939, p. 2122.) It may be assumed, however, that this amendment confers no benefit upon this contestee who was elected prior to its effective date. (*Sheehan* v. *Scott*, 145 Cal. 684 [79 Pac. 350]; *Bowring* v. *Dominguez*, 3 Cal. (2d) 167 [44 Pac. (2d) 299].)

It further appears that the contestee was admitted to practice law in this state on June 5, 1931; that he took office as city justice of the peace of the city of San Diego on Janu-

ary 5, 1935, and served as such city justice until May 7, 1935, when he took office as city police judge; that he served in that capacity until July 1, 1937, when he took office as a judge of the Municipal Court of the City of San Diego upon the establishment of that court; that since that date he has been serving and is still serving as such judge of the municipal court; and that, aside from some five years of judicial service, he has been engaged in the general practice of law only for four years and seven months. The question is squarely presented whether the contestee was at the time of his election ineligible and not qualified to hold said office because of this fact.

Section 11 of article VI of the state Constitution authorizes the establishment in certain cities of a new kind of municipal court, not theretofore known to our judicial system, which courts may be established ''as in this article provided'' notwithstanding any other provision in the Constitution. The second paragraph of this section declares that the legislature shall provide ''by general law'' for the establishment of such courts in certain cities, and for the government and jurisdiction thereof. The third paragraph of that section provides, among other things, that the ''qualifications'' of judges of such courts shall be prescribed by the legislature ''except as . . . otherwise provided in this article''. Section 23 of the same article provides: ''No person shall be eligible to the office of a justice of the supreme court, or of a district court of appeal, or of a judge of a superior court, or of a municipal court, unless he shall have been admitted to practice before the supreme court of the State for a period of at least, five years immediately preceding his election or appointment to such office.''

Section 23, just quoted, must be read and considered along with the other sections of this article of the Constitution and given due effect. (*Edler* v. *Hollopeter,* 214 Cal. 427 [6 Pac. (2d) 245].) So construed, it seems to have been intended to provide for and fix what may be termed the legal qualification, that is to say the necessary proof of training and ability in the technical field of the law, which is to be required of the judge of such a municipal court, as well as of the judges and justices of the other named courts. While the proposition is negatively stated in section 23, the only reasonable interpretation thereof is that it was intended thereby to fix the qualifica-

tion of such judges, in the respect in question, and to provide that a person possessing the named qualification was, in so far as such subject-matter is concerned, qualified to hold the office of judge or justice of such courts. Section 11 is also to be read in connection with section 23 of the same article. The third paragraph of section 11, in giving certain powers to the legislature in connection with the establishment of the new municipal courts, expressly excepts therefrom such matters as "are otherwise provided in this article". What we have called the legal qualification of the judges of such courts was otherwise provided for in that article and is to be found in section 23. It may be conceded that under section 11 the legislature was given power to fix and provide for certain other qualifications of the judges of these courts, such, for instance, as residence and age requirements. But, in our opinion, the entire matter of what we have termed the legal qualification of such judges, having to do with their training, ability and experience in the legal profession, was one that was covered and fixed by section 23 and one which was clearly withdrawn from the powers given to the legislature by the exception set forth in the third paragraph of section 11. We, therefore, hold that that portion of subdivision (a) of section 9 of the Municipal Court Act, as then existing, which, at the time of the election here in question, provided that judges of the Municipal Court of the City of San Diego must have had at least five years' active practice at law prior to their election or appointment, is unconstitutional and void as an attempted exercise of a power which had been expressly withheld from the legislature.

The contestant and appellant contends that despite any limitation upon the power of the legislature which may be contained in the third paragraph of section 11, an absolute and uncontrolled power to fix the qualifications of judges of a municipal court is given to the legislature by section 13 of article VI of the Constitution. This section reads: "Notwithstanding any provision contained in this article, the legislature may fix by law the jurisdiction of municipal courts and inferior courts in cities having municipal courts which may be established in pursuance of this article, and may fix by law the powers, duties, qualifications and responsibilities of judges thereof." It is argued that the legislature was thus authorized to prescribe the qualifications of the judges of the

Municipal Court of San Diego "notwithstanding any provision contained in this article" of the Constitution.

If section 13 were in conflict with section 11 it might be necessary to harmonize the two and search for an explanation as to why certain matters were expressly excepted from the powers given to the legislature in section 11 and then expressly given to the legislature in section 13. It is quite apparent, however, that there is no conflict between these two sections since section 13 refers and relates to a different kind of court than the one authorized and referred to in section 11. As we have said, section 11 authorized the establishment of a new kind of municipal court which was quite different from the various police courts and other purely local courts which had theretofore existed, and which had been and still are often referred to as municipal courts in the sense that they are city courts. The fourth paragraph of section 11 provides that in any city where a municipal court authorized by that section is established, there shall be no other court inferior to the superior court except as authorized by the legislature. Section 13 of article VI, prior to its amendment in 1928, provided that the legislature should fix the jurisdiction of any inferior courts which might be established in pursuance of section 1 of that article, and should fix the powers, duties and responsibilities of the judges of such inferior courts. This section was amended in 1928, and now reads as above quoted. Clearly, it refers to such inferior courts as may be established by the legislature, under the power given in the fourth paragraph of section 11, even in cities where what we have called the new municipal courts have been established. It plainly appears from the language used that section 13 now authorizes the legislature, notwithstanding any other provision contained in that article of the Constitution, to fix the jurisdiction of such inferior or local courts as it may provide for in cities having municipal courts which are established in pursuance of that article of the Constitution, and that where such additional inferior courts are established the legislature may fix the qualifications of the judges of such courts. Section 13, therefore, has no application to the present problem, which relates to a judge of this new kind of municipal court and has nothing to do with judges of any additional courts which might be, but have not been, established in the city of San Diego.

■ A further consideration is that in attempting to fix qualifications for judges of the Municipal Court of San Diego in excess of those provided for by section 23 of article VI of the Constitution, the legislature was not dealing with a municipal affair, and was bound by the constitutional provisions requiring uniformity, through general laws, there being no natural or reasonable distinctions which would warrant a classification of the municipal courts in the various subdivisions of the state based upon differences in the required qualification of their judges. In this regard, we adopt portions of the opinion filed by the five judges of the trial court, which are as follows:

"It is still our view that the Constitution of municipal courts from every viewpoint, except only that of the bare question whether they shall exist at all or not in given localities, is a state, rather than a municipal affair. This seems to us necessarily to follow from the requirement of section 11 of article VI of the State Constitution that 'the legislature shall provide by general law for the constitution, regulation, government and procedure of municipal courts and for the jurisdiction thereof except in particulars otherwise specified in this section, and for the establishment of municipal courts in cities or cities and counties governed under charters framed and adopted under the authority of this Constitution and having the population hereinbefore in this section specified,' i. e., more than 40,000 inhabitants. The only 'particulars otherwise specified' in section 11, that is particulars in which the subjects mentioned are excepted from the requirement that they be governed by 'general law' have to do with the right of the voters of the municipality to decide whether they wish such courts or do not wish them. They can, if they choose, have courts of the sort prescribed by general law under authority of article VI of the Constitution. But they must choose whether they want those courts or do not want them. They must either take them as the general law constitutes them or not take them at all. The circumstance that such courts are not in their functions or jurisdiction treated as falling within the category of municipal affairs is patent. Their proceedings are, by authority of the express provisions above quoted of section 11 of article VI of the Constitution, regulated by the legislature, and are in fact governed by the Code of Civil Procedure. The Appellate Department of the

Superior Court of Los Angeles county has in the recent case entitled *People* v. *Barnhart,* 37 Cal. App. (2d) (Supp.) 748 [94 Pac. (2d) 411], laid it down that their procedure as well as their jurisdiction is essentially a state rather than a municipal affair, and said that to interpret charter provisions as 'limiting the jurisdicton of, or regulatng the procedure in, such courts would render such provisions void as obnoxious to general law in a field not constituting a municipal affair and already occupied exclusively by the state.' As respects their jurisdiction it is now held that it extends to certain classes of cases not arising at all within the municipalities within which their judges are elected. (*In re Luna,* 201 Cal. 405 [257 Pac. 76].)''

''Municipal courts of the sort contemplated by article VI of the Constitution, though they may exist only if provided for by freeholders' charters of cities having populations in excess of 40,000, must yet be established pursuant to general law. (Const., art. VI, sec. 11.) The requirement that laws of a general nature have a uniform application does not, of course, prohibit the making of reasonable classifications of the persons or objects upon which they are to operate, but the classification must be based on some natural, intrinsic or constitutional difference warranting it. (*Abeel* v. *Clark,* 84 Cal. 226, 230 [24 Pac. 383]; *People* v. *Jordan,* 172 Cal. 391, 397 [156 Pac. 451]; *Reclamation District* v. *Riley,* 192 Cal. 147, 156 [218 Pac. 762]; *Heron* v. *Riley,* 209 Cal. 507, 518 [289 Pac. 160].) We cannot see that any possible reason can exist for the classification of judges of the municipal court of the city of San Diego in a category with respect to their required qualifications different from that applicable to the judges of other municipal courts constituted under the authority of article VI of the Constitution. In so far as they are charged with administering law generally the classes of cases which they are authorized to consider are throughout the state the same. It is suggested, indeed, that they may be called upon to deal with the ordinances of cities which differ from place to place. But since the requirement invoked is not that they have five years of active practice in any one locality within the state, the idea that it has any relation to the need for local experience with local enactments is untenable. Contrariwise we think this precisely a case where the general rule requiring uniformity should be enforced, for it ought to be the right of

litigants in whatever part of the state they may be to have in courts of the same grade, the same standards of required learning and experience in their judges. Eccentricities in this connection are highly undesirable.

"It is, indeed, suggested that the particular distinction attempted by the statute under review is but one of a great many affecting even such municipal courts themselves, such for example as the variation between place to place in the salaries allowed their judges, in the number of their attaches and the salaries allowed the latter and so on. These distinctions, however, seem to us to fall into a different category. They may be wise or unwise but are of the sort recognized as legitimate in such cases for example as *Cody* v. *Murphey*, 89 Cal. 522 [26 Pac. 1081]. There are numerous considerations having to do with the cost of living in particular localities or the pressure or want of pressure of business in one place as compared with another or other geographical considerations that furnish legitimate ground for the exercise of legislative judgment in making classifications of that sort. Whether in these circumstances the judgment of the legislature is correct or not is no concern of the courts. But as respects the propriety of uniform standards of judicial competence in courts of the same class we do not see that there is any reason for legislative judgment. It is a subject on which uniformity is of extrinsic importance and on which no reasonable ground for diversity can exist."

For the reasons given, the judgment is affirmed.

Marks, J., and Griffin, J., concurred.